## HARRIS v. HANKS, et al.

VENDOR'S LIEN—*accepting security not always a waiver.* Where the vendor accepted an assignment from the vendee, of his alleged interest in a decree against a third person, C., without any promise from C., but with a warranty of payment from the vendee, and the decree is afterwards set aside and made worthless, the *lien* of the vendor is unimpaired.

*Prima facie,* real estate sold is subject to a *lien* for the unpaid purchase money.

The lien attaches if, under all the circumstances, there remains a *doubt* as to the intention to waive the lien, where other securities are accepted.

The execution of an absolute conveyance, with acknowledgment of the receipt of the purchase money, is *not* a waiver. Neither is the taking of a covenant from the vendee a waiver.

It does not destroy all the equity of a bill, to enforce a vendor's lien, that *household furniture* was sold with the land, and covered by the same common consideration.

This objection *can not* be raised by a general demurrer to the bill.

### Appeal from Phillips Circuit Court.

Hon. JOHN E. BENNETT, Circuit Judge.

PIKE, ADAMS & PIKE, for appellant.

Where a vendor delivers the possession of an estate to a purchaser, without receiving the purchase money, equity, whether the estate be or be not conveyed, and although there was not any special agreement for that purpose, gives the vendor a lien on the land for the money. 2 *Sugden on Vendors, ch.* 12, *p.* 62. And this, as well against the vendee himself, and his heirs and others, privies in the estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid. 2 *Sto. Eq. Jur., sec.* 1217, *and note* 4; *Blackburn v. Grayson,* 1 *Bro. C. R.,* 423; *Grant v. Mills,* 2 *Vesey and Beam.,* 306; *Gilman v. Brown,* 1 *Mason C. C. R.,* 212; *Elliott v. Edwards,* 3 *Bos. and Puller,* 183; *Stafford v. Van Ransalear,* 9

*Cowan*, 318. See, also, 6 *Vesey*, 483, 759; 1 *Schoales and Lefroy*, 132; *and Garsen v. Green*, 1 *J. C. R.*, 308; *and Herbert v. Scofield*, 1 *Stockt.*, (*N. J.*,) 327; *Hancock v.* Smith, 3 *Barb.*, *N. Y. S. C. R.*, 267; *Champion v. Brown*, 6 *J. C. R.*, 398; *Shall and others v. Biscoe and others*, 18 *Ark.*, 142.

And so, indeed, do all the cases admit; but the points upon which there has arisen the greatest disagreement between the courts, and which seem to have been the most difficult of solution, are: First, as to what shall be a waiver of the lien; and second, upon whom, vendor or vendee, rests the *onus* of showing the *intent* of the parties as to the facts claimed as a waiver.

In examining the authorities upon this point, let us not forget that this is a proceeding between vendor and vendee—*no* other or representative right intervening.

Mr. Sugden, vol. 2, 72, says: "Upon the whole, therefore, it seems quite clear that, taking a covenant, bond, or note, for the purchase money, or any part of it, will not discharge the vendor's equitable lien on the estate. And it seems that the same rule must prevail, although the estate is sold for an *annuity*, and a covenant, bond, or note is taken for *securing* the payment." Here the estate was sold for an interest in a judgment, and Hanks, by his *personal* covenant, guaranteed the payment to vendee of the amount transferred.

The authorities, we submit, clearly establish these propositions:

1. That, *prima facie*, the vendor's lien for the security of the unpaid purchase money attaches to and is a charge upon the land.

2. That this lien may be waived and displaced, by the vendor taking independent *security* for the payment, with the agreement that such independent security is substituted in lieu of the lien.

3. That it rests with the vendee to show that the lien has been thus waived or displaced, by positive proof, or by such apparent circumstances, *constituting a part of the contract, (Dubose v. Hull,)* as of themselves show such waiver, as taking

mortgage back upon land sold. These, then, being the legal principles involved, how is the present case affected by them?

The cause now standing upon demurrer to the bill, there is, of course, no evidence as to the intention or agreement between the parties, or to the existence or waiver of the lien, save such as is afforded by the bill and exhibits.

GARLAND & NASH, and ENGLISH, GANTT & ENGLISH, for appellee.

The equitable lien for the purchase money will be considered waived, whenever any distinct and independent security is taken, unless there is an express agreement that the implied lien shall be retained. 1 *Lead. Cases in Eq.*, p. 364, and cases cited; *Blight's Heirs v. Banks*, 6 *Mon.*, 199; *Ducker v. Gray*, 3 *J. J. Marshall*, 163; *Wilson v. Graham's Exrs.*, 5 *Munf.*, 297; *Williams v. Roberts, et al.*, 5 *Ohio*, 35; *Mayhan v. Coombs, et al.*, 14 *id.*, 428.

An equity which is confined exclusively to sales of land does not attach when, as in this case, real and personal property are conveyed by one deed, under an entire contract, for one and the same consideration. *McCandlish v. Keen*, 13 *Grat.*, 605.

GREGG, J.

On the 11th of April, 1868, Martha J. Harris filed her complaint in the chancery court of Phillips county.

On the 23d of November, 1868, the defendant, Hanks, appeared in that court and filed his demurrer to her bill of complaint. The court sustained the demurrer, dismissed the bill, and decreed costs against complainant; from which decree she appealed to this court.

The bill alleges that, on the 14th of November, 1861, she owned and possessed lots 464, 465, 466, 467 and 468, in the city of Helena, and certain household and kitchen furniture, which she then sold, and, by deed, duly conveyed to defend-

ant, Hanks, for $3,900; that she was then informed by Hanks that he owned a one-third part of an unsatisfied decree, rendered in favor of himself and Adams, against John and Joshua Craig, in the chancery court of Chicot county, for $12,761$\frac{17}{100}$; and, to secure the payment of said $3,900, the said Hanks then assigned that amount of said decree to her, and by his deed of covenant, agreed that the assignment should have the same force and effect as if made on the day said decree was rendered, to wit, the 16th of October, 1861, and he warranted the payment.

Upon such agreements Hanks took possession of the lots, and that he still holds them, and that the other defendants are mere tenants under him; that, after the making of such contract, and at the October term, 1866, of the Chicot county chancery court, the decree against said Craig, in favor of Hanks and Adams, was wholly canceled and held for naught, and that the decree annulling and setting aside said former decree was and is in full force; and that said first decree and the assignment aforesaid to her, became and is valueless; that no part of said $3,900, and the interest thereon, has been paid, (except $250, which she received from said Adams with the information that he had collected that sum on said decree before the same was canceled,) and the balance remaining due the complainant, on the 1st of April, 1868, was $5,157; that, at the date of said agreements, a suit was pending by said Craigs, against Hanks and Adams, to set aside said decree, which had been rendered in their favor for $12,761$\frac{17}{100}$, and that she had no knowledge of such proceedings; being a woman not versed in such matters, she made no inquiry, but relied on the representations of said Hanks, etc.; but she charges no willful fraud or misrepresentations.

She makes exhibits of the deed and covenant, and offers to exhibit a certified transcript of the record of the Chicot chancery court, in the matters therein referred to, if demanded; but, to save costs, she asked the defendant to waive any right

33

to have such exhibit. She prays for a decree for the balance of the purchase money, and interest thereon, and that a vendor's lien be declared in her favor upon the lots, &c.

The defendant assigns for causes of demurrer :

.1. That it appears from the bill that the complainant asks for the enforcement of a vendor's lien on real estate, sold for a *special consideration*—that is, for an interest in a decree in the Chicot chancery court, and assigned by the defendant, Hanks, to her, with his covenants of warranty, &c.; that, having accepted the decree under the covenants of the defendant, as recited in the bill, she waived her right to a vendor's lien, and must rely upon such assignment and warranty.

2. Because there is no equity in the bill, &c.

3. There is no exhibit of the proceedings in the Chicot chancery court.

4. Because the bill is otherwise informal and insufficient.

Upon the hearing the defendant waived the third cause assigned in his demurrer.

The court held the demurrer well taken, and the question here presented is, whether the bill upon its face discloses sufficient equity to entitle the complainant to a decree against the defendant?

The equities of parties, on applications to enforce vendor's liens, have been much discussed, and the rule established is, that, *prima facie*, real estate sold is liable to a lien for the unpaid purchase money. *Walker v. Preswick*, 2 *Vea.*, 622; *Maddock's Chy.*, 130, *and cases cited; Halleck v. Smith*, 2 *Barb.*, (*N. Y.*,) 267 ; *Shall, et al., v. Biscoe, et al.*, 18 *Ark.*, 149, and authorities there referred to.

This privilege or right of the grantor, like other rights arising upon contract, may be waived, and when the terms of the contract show an intention on the part of such grantor to waive his lien, and rely upon other resources for the purchase money, he can not afterwards maintain a vendor's lien, if other securities of his own selection should fail. *Naim v. Prowse*, 6 *Vea.*, 752 ; 1 *Mason Ct. Ct. R.*, 216.; 4 *Kent*, 153.

Nor is the taking of other securities always a waiver of a vendor's lien. If the terms of the contract show that the parties intended to preserve the lien, it may be enforced.

The making of a transfer, absolute upon its face, and the acknowledging of the receipt of the purchase price, will not prevent the vendor from enforcing a lien against the vendee, or others holding under him, with notice that the purchase money is not paid. *Sugden on Vendors, vol.* 2, *page* 33, *and note* 1.

We may lay it down, as a rule, that the transfer of lands and the accepting of security, other than the obligation of the vendee, is, *prima facie,* a waiver of the lien; and, to enforce a lien in such case, evidence would be required manifesting a different understanding between the parties to the contract. Justice STORY says, on this subject, "if, under all the circumstances, it remains in doubt, then the lien attaches." 2 *Story's Eq. Jur.,* sec. 1224 *and* 1226.

A grantor might lose his lien by an absolute conveyance, where the property passes into the hands of an innocent purchaser; but no such question is raised here.

The deed of conveyance, in this case, sets out that the consideration for the lots was $3,900, but the bill alleges that certain household and kitchen furniture was therewith sold for that sum. Counsel here place stress upon the fact that a lien is asked for that personal property also. It may be replied, no such special cause was assigned for demurrer; and if it is equitable to enforce a lien for the lots, the including household furniture, in the aggregate sum for which a lien is demanded, could not destroy all the equity in the bill, and was not reached by a general demurrer.

The court having jurisdiction to determine the alleged lien upon the lots, would investigate the whole controversy, and decree according to the merits.

If the defendant wanted a specific statement of the value of the household goods, he should have pointed that out in his demurrer, or he should have answered, averred and proved

the value of such furniture, and to that extent reduced the claim of lien.

We assume, as settled, that the execution of an absolute conveyance and acknowledging the receipt of the purchase money is not a waiver, nor is the taking of a promissory note, or any bond or covenant, from the vendee, such security to the vendor as will defeat his lien. To defeat the lien the grantor must accept the security of a third person, or a security upon other and different property, and it should appear that it was the contractor's intention to pass such as security, and not as payment or a mode of payment.

The ground-work of a vendor's lien is in that very equitable doctrine, that it is unconscientious for any one to hold and enjoy the real estate of another without paying a consideration therefor. And although a vender may take a vendee's note, or his check, or draft upon some third person, if he can not negotiate such note, or, if such draft be dishonored, he may fall back upon his lien. Such instruments are only evidences of liability ; they are given out as a mode of payment ; their issue is but one step towards liquidating the demand ; they are means to effect a payment, and are not such security as can prejudice the vendor. See 2 *Vernon*, 281; *Hughes v. Kearney*, 1 *Schoales & Lafroy*, 135 ; *Maddock's Chy.*, vol. 2, 130 ; *Conell v. Simpson*, 16 *Vea.*, 278; *Scott v. Orbison*, 21 *Ark.*, 202.

In the case before the court the complainant accepted an assignment of an interest in a decree against the Craigs ; she received the obligation of the defendant, Hanks, he assuring her that he owned one-third of such decree, and that she should be paid out of it. She had no promise from Craigs, no security from any one except the defendant. She had simply a transfer of his claim and an authority to her to receive that sum, which he warranted to be paid ; her authority to draw that money was not honored; she was not paid therefrom ; and now, when no innocent parties have been involved, when no intervening equities have arisen, while this whole transaction

stands in its primitive nakedness between vendor and purchaser, can a court of equity say it is not unconscientious for this complainant to lose her property, and this defendant to hold and enjoy it without paying therefor?

She expressed no waiver of her lien; she took no third person's promise; she took but the assignment from the defendant and his obligation. The making of that assignment was, at most, but a mode of payment; and, when that failed, she had a right to look back to the defendant, not only upon his broken covenant, but to the original equity she had against him, and the lots she had placed in his possession, and to demand of him that payment be made, or the lots subjected to her just claim.

She had been guilty of no laches or faults; no one had been damaged or deceived by any act of hers; a large amount of her property had passed into the defendant's possession; except $250, he paid nothing therefor. Under these circumstances, will the rules of equity grant him a homestead at her expense, upon the untenable ground that she is barred, because she attempted to collect out of an almost worthless decree? We think not, and we hold that she is not bound to test his solvency, at law, upon his broken covenant, before she can resort to her superior equity in the lots.

A recent act of the Legislature, declaring that no lien shall be allowed when the same is not reserved in the deed of conveyance, can not of course affect this case.

The decree of the Phillips chancery court, in this cause, is reversed, and this cause remanded, with directions to overrule the defendant's demurrer, and allow him to answer, and to proceed to a final hearing and decree, not inconsistent with this opinion.